Thank you Judge Briscoe, and may it please the Court, I'm Assistant Solicitor General Grant Sullivan. I represent the Colorado Secretary of State, Wayne Williams. The right of initiative is not contained in, nor required by, the federal Constitution. Instead, direct democracy is a creature solely of state law. When a state like Colorado chooses to extend the right of initiative to its citizens, it retains considerable discretion and control over how that process is implemented on the ground. That includes decisions such as the number of required signatures, the time frame for gathering those signatures, and, as here, the geographic distribution of those signatures. Now I'd like to focus my time today primarily on why the District Court erred in its equal protection analysis when it permanently enjoined Colorado from implementing its geographic distribution law. And then, if time allows, I'll touch on plaintiff's First Amendment claims and the District Court's procedural errors. But, of course, if the Court has questions on other topic areas, I'm happy to address those. So turning first to the District Court's equal protection analysis, the lower court went through a fairly lengthy analysis, analyzing both Supreme Court equal protection cases and lower court cases involving geographic distribution requirements. But at the end of the day, the District Court's single dispositive factor that led it to strike down Amendment 71 was its view that equality of representation simply is not a concern in the initiative context presented here. The Court stated, quote, there is no representative equality component of the equation to balance against the integrity of the vote. In other words, there is no representation, there's only voting. That's page 19 of the District Court's decision. There are a few different reasons why we think that analysis doesn't quite stand up to scrutiny. First under Evanwell, the Supreme Court stated that even large disparities in the number of registered voters across districts does not amount to an equal protection problem, so long as the district's total populations remain roughly equal. In Evanwell, the deviations in registered numbers of voters across Texas' state senate districts exceeded some 40 percent, but the court found that disparity immaterial, again, because the districts were roughly the same in total population. Now it's important to remember that Evanwell concerned voting, which is a fundamental right under the federal constitution. Signing an initiative petition is a state-created right not protected by the federal constitution. But you can dilute voting, can't you, even when you're looking at a state-created right? Well, I think Evanwell makes clear that there's two competing interests at stake. It's the equality of representation and the interest in preventing vote dilution. And using total population balances those two interests. As every state does in the country, every state uses total population. Well, total population is not the same as registered voter. That's correct. Right? And isn't that the problem here? Absolutely. Just as in Evanwell, where there were some deviations between the districts. In that case, the deviations exceeded 40 percent between total population and registered voter population. Nonetheless, the court went through the analysis and looked at all the different things that are important when analyzing gerrymandering. It looked at what are the rights at stake, and it decided that total population appropriately balances all the different rights. In Moore versus, I don't know how to pronounce the name, Ovilee, the court extended the one person, one vote rule to the initiative process. So why shouldn't that concept apply here? I think we agree that certainly the equal protection clause applies in this context. Colorado cannot arbitrarily dilute people's right to vote, certainly. And certainly Meyer v. Grant says that having decided to confer the right of initiative, the state is obligated to do so in a manner that's consistent with the Constitution. So we certainly agree with that principle. But, again, under Evanwell, the court held that total population accommodates both of the competing concerns. Also note that the Ninth Circuit... But it looked at both competing concerns. And do you satisfy Evanwell here? Yes, Your Honor, we do. And how do you do that? So Texas, excuse me, Colorado's 35 state Senate districts are roughly equal in total population, just like Texas is. Equal in population does not mean equal in voter registry. That's correct. That's correct. There is a difference. Isn't that a problem? No, I don't think so, because I think where the district court came down on this was it elevated the interest in preventing vote dilution to the exclusion of equality of representation. And here equality of representation remains an important concern. The concern is that and I think equality of representation, some of the cases talk about, well we want to make sure that all residents, voters and non-voters alike, have equal access to their elected lawmaker. Well here, equal access to the initiative process is a valid concern. Coloradans, when they went through the voting process and approved Amendment 71, they declared as a policy matter that we want to make sure that all Coloradans, urban and rural alike, have an equal opportunity to participate in the initiative process. And in Colorado, the ability of elected lawmakers to enact legislation is on co-equal and equal footing with the ability of citizens to directly initiate legislation. So I think the interest that is at stake is equality of representation is here as well. And Judge Briscoe, I'd point you to footnote 14 in Evanwell. Footnote 14 in Evanwell talks about how the state certainly has an important interest in affording all citizens, voters and non-voters alike, an equal access to their lawmakers. And I think that same idea extends to equal access to the initiative process. You're talking about the rural states in this circumstance having some input into the determination of whether or not it goes on the ballot. Is that your point? That's correct. And certainly there are a couple other state interests as well, Judge Murphy. So the state interests that are at stake here, certainly Coloradans decided as a policy matter that we want to make it more difficult to amend the state constitution. Another state interest is, as you point out, ensuring that all citizens, rural and urban alike, have equal access to the initiative process. And it must be non-discriminatory, right? I mean, that's part of footnote 14. Yes, Your Honor. The state certainly has an interest in taking reasonable, non-discriminatory steps to facilitate access for all its residents. Is that happening under that amendment? Yes, Judge Briscoe. All states, or excuse me, all courts that have looked at geographic distribution requirements like this, I'd point, Your Honor, to the Engle decision from the Engle case. They concluded that using total population is a reasonable, non-discriminatory way to make sure that all citizens across the state have input into the initiative process. But none of those cases really directly addressed the dilution question, did they? I think Evanwell does. Evanwell, no, but I mean the other cases you're talking about. That's correct. I mean, did Engle talk about dilution? Well, Engle certainly says that, and it cites the other Ninth Circuit cases that say, you know, listen, a state can't use the Moore type regime that Judge McHugh just mentioned because that's a county-based system and counties have different total populations. But states certainly could use a different type of scheme like using existing legislative districts. But they never, in Engle, as I recall, they never focused on the difference between population in the district generally and population of registered voters in the district. I think that's fair, Judge McHugh. I think they wrestled with a slightly different question. I think when they noted, perhaps it was dicta, but when they say that states could achieve the same state interest by using existing legislative districts, I think that's an Evanwell-type conclusion, and certainly Evanwell does grapple with this exact issue. Well, they say there's a balancing, and we keep going back to the same thing. In Moore versus Ogilvie, wasn't it a problem that applying this rigid formula does not work because you do not have the one-person, one-vote outcome? That's right. So Moore was a county-based system. I believe there were some 93 counties in Illinois, and you had something like 93 percent of the population resided in about 50 of the counties. And the remaining 43 of the counties, you had 6 percent of the population, a very small percent of the population. So there, it was a very large disparity. And again, it's a total population-based analysis in Moore. And because the total population across the counties did deviate so drastically, the court said that that cannot stand. Do we have a large deviation here as regards registered voters? The complaint alleges, and of course we're here on a motion to dismiss denial, so the state has taken as true the complaint's allegations for purposes of our motion to dismiss, and I believe the allegation was that there's deviations of about 60 percent. But again, if 40 percent is okay in Evanwell, and again, in Evanwell, the analysis was the disparity in number of registered voters doesn't matter because the districts have equal total population. That's the test. But you started down this path and then didn't go there. This question of quality of representation, district court said that that is not a factor when you're talking about ballot initiatives. And you say that's not true. Why is that not true? It's not true because Coloradans, as a policy matter, declared that equality of representation is important in the initiative context. Well, can Colorado declare that, or does it actually have to be true? I think Coloradans, when they enacted Amendment 71, they were concerned that rural voters were being completely shut out of the initiative process. And there's declarations in the record to this effect that Colorado... It started with good voting, but then you look at the result, and is that good? Certainly as a policy matter, I think Coloradans can decide that we want all citizens across the state to have input in what goes on the ballot. And I think that's a policy matter that Colorado gets to choose. So this is a state's rights case? That the federal government and federal cases and Constitution have nothing to do with this? We should let the state do what it wants to do? Certainly Colorado could not do something that violates the Equal Protection Clause. And we can see that. Good to hear. Good to hear. Our point is that I think under Evanwell, coupled with the cases like Engle, you put those two analyses together, and what Colorado has done is certainly permissible under the Equal Protection Clause. All right, but what I wanted to drill down into on the quality of representation was the statement in your brief that because a signator is maybe going to be representative of somebody who's not an eligible voter, the mother-child thing, somehow that reflected upon quality of representation. So you're equating a legislator to a signator. I think that is a good analogy, Your Honor. I think the district court called this a social assumption. He made a social assumption that in the voting context, when a parent votes, they are representing both their interests and their interests of their minor child. Well, there's no reason, and whatever you think of that rationale, I'm not sure that we agree with it, but if that rationale is going to be used to strike down Amendment 71, then I think it deserves some scrutiny. And certainly that rationale can be extended to the initiative context. If a parent signs an initiative outside of Target after buying groceries, they're probably signing both on behalf of themselves and their minor child. And I think there's no reason to strike down Amendment 71 on that subject. Is your point on this to respond to what the district court said or to say, this reflects quality of representation? To respond to what the district court said. Okay. All right. You do not object to the application of strict scrutiny, is that correct? We think strict scrutiny does not apply. Did you say that in your brief? In our reply, we respond saying... Okay, but not in your opening brief. We were responding to their argument that strict scrutiny does apply, and certainly we think it does not because, as we say, signing a petition is not a fundamental right. Do you rely upon angle for that? Did an angle apply a reasonable basis? Yes. That's correct, Your Honor. We've denied, we've refused to apply strict scrutiny in a couple of cases as well, haven't we? I think that's correct, Judge McHugh. I do want to save just a couple of seconds for rebuttals, but if there are other questions, I'm happy to... Thank you. Chief Judge Briscoe, may it please the Court? No longer, Chief Judge. No longer, Chief Judge. Oh, I apologize. Free at last. Congratulations. Thank you, Chief Judge Briscoe. Free at last. Thank you, Chief Judge. Can we pull the microphone down a little bit? Is that better? Can you hear me now? I'm Ralph Ogden, and I represent the plaintiffs' appellees in this case. I want to discuss three issues. First, I'd like to show that there are two different kinds of vote dilution in this case, both of which violate the Equal Decision and show why it doesn't apply to ballot access cases, which is what initiatives really are, the signature gathering. And third, I'll apply the Anderson Balancing Test to show why the 2 percent requirement has to be stricken. Do we apply the Anderson Balancing Test here? I mean, I find it interesting that Evanwell doesn't even mention it and certainly doesn't apply it. But other initiative cases, other voting equal protection cases, have applied the balancing test. And we've applied it. Yes, this Court has applied it. But it's kind of interesting that the Supreme Court doesn't seem to think that's the test. You can never guess what motivates the Supreme Court. But aren't we bound by their analysis as much as we're bound by their ruling? Right. But Anderson applied that test and that was a Supreme Court decision. It applied in a, wasn't that a First Amendment context? The exact language in Anderson was, it said both the First Amendment and the 14th Amendment. But it actually applied it in the First Amendment. You're correct, Your Honor. In Gray v. Sanders, the Supreme Court held that homesight is not a legitimate basis for distinguishing among voters or giving voters in one location, giving their votes greater weight than in any other location. Amendment 71 violates that fundamental rule because it gives voters, it gives weight to more signatures in some districts than it does in other districts. And here's how that works. The purpose of Amendment 71's 2 percent requirement, as the state admitted in its opening brief, as it says in the blue book, is to give rural voters a greater say in determining what issues make the ballot. That's the purpose that the court needs to address. It can only give rural voters a greater say by diminishing the value of the votes in the urban or more densely populated districts. And here's an example of how that would work. If the entire electorate in one or a few densely populated districts signed the petition and had enough signatures to satisfy the 5 percent requirement, they still couldn't get it in the ballot. They still depend on the signatures of people in all of the other districts, be it 34, 33, 32 districts. In other words, the value of that 5 percent, which satisfies the basic threshold requirement for ballot access, depends on the whim of voters in 34 other districts. That's something that's analogous to the unit voting system that Gray versus Sanders said violated the Equal Protection Clause. In Evenwell, which was a direct voting case, which would be also a directly recognized federal constitutional right, the court said you don't have to look at registered voters if you're using districts where population is equal. Why shouldn't that same rationale also apply in the situation where the state has much more leeway, which are the procedures for putting an initiative on the ballot? Well, I don't necessarily agree with what you say about the state having much more leeway. The state is bound by the same constitutional principles that have been consistently announced. OK, then let me rephrase the question. If it wasn't a violation of the Due Process Clause in Evenwell, not to look at registered voters, why would it be a violation of the Equal Protection Law? Signature gathering for initiative petitions and candidate nominating petitions is fundamentally a ballot access issue. Evenwell was not a ballot access case. The court didn't discuss ballot access. It focused on the issue of representational, of equality of representational representation. It isn't when you're doing an initiative that the people who sign the petition, the people are directly legislating as opposed to having their representatives legislate for them. So really, isn't it true that when I sign a petition, although I can't sign petitions now, but hypothetically, that I am serving in a representative capacity for everyone in my district? I don't think so. And why not? Because it's the same thing is that what happens when we cast a vote. If I cast a vote for or against something, I'm voting for myself. I'm not voting for everyone else in my district or in my family. That's a very personal decision that I make. Same thing for signature gathering. That's a personal decision that says, I want, I personally want to see this in the ballot. I'm not speaking for everybody else because everybody else may or may not want to sign the petition. But you're certainly speaking for those in your family who can't vote, right? People whose interests you're concerned about. I might be, my hypothetical petition might have something to do with the school board. I'm out of school, but I have kids in school. I suppose to some extent that's true, that if I have a family and they're interested in a petition, I'm expressing their interest. I would agree with that. Didn't the district court say something diametrically opposed to that? It says signatories do not fulfill any representational... But it's a different situation from voting for a representative who represents  I think that's categorically different. Well, my concern is, it wasn't that a misdirection by the district court to say that. I mean, you just conceded something the opposite of what the district court said. That a signatory can well have representational interests. You're right. And if we were to disagree with the district court and conclude that there is a representative component to get a signature gathering effort to get an initiative on the ballot, then the analysis applied by the district court would be incorrect. It would be an error. I don't think so. Let's go back to what I said a few moments ago about the disparity in voting power from a large district that gathers 5% of the signatures. If they can't put it on the ballot without the consent of 34 other districts, that's classic vote dilution. But isn't that the same thing in a direct vote situation? Where you're, when you're deciding in the Evanwell case, you're, you're refusing to look at the registered voters and just looking at relatively equal district populations, even though there's relatively large disparity in the people who are actually going to vote. I think it's different, Your Honor. And it's different because if you apply the reasoning of Gray versus Sanders, a state couldn't require an initiative or a candidate for statewide office and initiative is a statewide issue. It couldn't require them to get votes in all 35 Senate districts, couldn't require them to get a majority in those districts or even a percentage of it. Well, is Gray versus Sanders the one for nominees who were not from a recognized party? No, it was a statewide, the county unit system allocated certain number of votes per each county in a state primary election. Right, but when we're looking at counties, we have an immediate red flag problem because counties are not relatively equal in population. Right. So I think the Supreme Court, maybe my colleagues disagree, I think the Supreme Court has made it pretty clear whether you talk in state or federal initiatives, vote or you can't rely on counties. I agree with that. Okay. So we're really looking at whether you can look at districts rather than registered voters. But as long as a smaller district, even if it's equal in population, can veto a ballot measure supported by the requisite number of signatures, that's vote dilution because it gives those people in one county a vote against what is the 5 percent. That's a different type of vote dilution than the classic one, but it's dilution nonetheless. So this amendment would have been fine if they would have stopped at the 5 percent. But when they added the 2 percent requirement for all districts, having to get the 2 percent from all other districts, that's the trigger, that's the problem here? Yes. And I think there's kind of a related problem and that is that it requires consent from all 35 districts. I think it would be a different problem if it didn't require, if it required a lesser number of districts. I don't know what that number would be, but I think it would be a different analysis under the Equal Protection Clause. I want to direct your attention to the permanent injunctive relief. So there was no evidence taken in this matter. Let me ask you, assuming strict scrutiny applies, isn't there an evidentiary element to one of the things to consider in strict scrutiny? And that is, what are the reasonable alternatives, if any?  I don't think that you need to consider the reasonable alternatives because the state said there weren't any in its reply to the Show Cause order. Well, well, no, they attached. I mean, I was looking at that letter from their expert and he suggests maybe there are this. I can't read his handwriting, but this gentleman from the University of Denver, he suggested that there are no reasonable alternatives and there was no evidence on that at the time the court issued its permanent injunction. The court is required to decide the constitutional question based on the undisputed evidence, which I mean, the state never challenged the fact of unequal voter populations. Well, they they accepted it because it was a 12 v. 6 motion. The court could have taken judicial notice of that because it's a public record. So it doesn't it doesn't matter. OK, but I understand that. But what I'm trying to get at is that in applying strict scrutiny, there are some evidentiary things that may be important. For example, couldn't there be evidence as to the interests of the state that would elevate it from an interest that's important to an interest that's compelling? The state conceded in its briefs to the district court that the state interest was to ensure greater say in what initiatives make the ballot to ensure that greater say among rural voters. Right. But we need to determine what the weight of that interest is. Is it compelling or is it merely a rational basis? In Blomquist versus Thompson, the court said that was not a compelling interest. And an angle even says that that's not a compelling interest. Angle said that there was no vote dilution. And he was angle a 12 v. 6 case or a summary judgment case or a trial case. An angle. Yes. Summary judgment or after a trial. OK, that's that's entirely different than 12 v. 6. 12 v. 6. You're just looking at this thing and accepting the purposes of argument what's in the complaint and which makes it essentially a facial analysis rather than an as applied analysis. This was a facial challenge, Your Honor. Yes. And the facts. So angle is not going to help you because angle is not a 12 v. 6 case. You have a case that says that there's no evidentiary basis in the determination of the weight of the state's interest, whether it's important or compelling, whether there are reasonable alternatives and what they are or how extensive the dilution is. Do you have any case that says you can do that on 12 v. 6 without taking evidence? I think what the court did was convert this to a 56 F motion for summary judgment. It gave the court it gave the state a chance to provide evidence that there was no vote dilution because dilution was the only issue the court was deciding. Well, but the state came back and in response to the order show cause they say, well, there are really some important issues here is about whether there is any alternative. And you need to hear that because it affects strict scrutiny. But again, the state said there was no alternative that could make this constitutional. Exactly. And that is to be factored in, isn't it, when you apply strict scrutiny, that there are no alternatives. So that if it's legitimate to allow rural districts to have a say they did not previously have, don't you have to factor in whether there are any alternatives. You mean alternatives that would be constitutional? Well, this. Yes, absolutely. I don't think that's the point of this expert. He he he says, you know, I'm just dabbling in this because I just got this thing and trying to unwind. I don't think he did not think that you could come up with an alternative. I don't think. It addressed both equality of representation and dilution. That it's impossible because of the underlying basis. You're talking about registered voters when you're talking about a ballot initiative. I don't think it's a district court's job to look at. At theoretical alternatives that the state says don't exist, because it's not the court's job to give the state guidance about what is constitutionally permitted and what's not. You keep saying that the state did not say or the state conceded. Are you saying that in the response to the order to Shokas, including the letter from the University of Denver professor, that the state did not contest the proposition that there are underlying factual issues here? The state said that it offered nothing to refute the central fact, the only relevant fact of the case, and that was the extent of voter dilution. The state did not challenge those facts. So is your entire case built on the proposition that the only issue in this case is whether or not there was dilution? Is that the sole pillar of your case? No, there's other issues that the district court didn't address, like the compelled speech case and the ballot access issues. Well, you're talking about the First Amendment. Yes, but the only equal protection issue in this case. The only issue is dilution. Yes, sir. Period. Yes. That's helpful. Thank you. Thank you. Thank you, counsel. Would you give him four more minutes? Thank you. Thank you, Judge Briscoe. I want to push back on this idea that the General Assembly exercising its legislative power is somehow different from the people exercising their legislative power under the initiative right. The Supreme Court has explicitly rejected that idea in Arizona State Legislature, the Arizona Independent Redistricting Commission. They say that the two sources of legislative power are on a co-equal and coordinate basis. So I think the fact that Colorado has decided to allocate, through part of the initiative process at the signature gathering state, the same political power to the Senate districts as it does at the General Assembly is a policy decision that Colorado is permitted to make. Judge McHugh, you asked about the Anderson balancing test. I agree with you. I think that Anderson doesn't need to apply here for the simple reason that Evanwell doesn't apply the Anderson balancing test. I will point out that the lower courts that have looked at geographic distribution requirements are somewhat split on this issue. I think two of the cases that we cite in our briefing do apply an Anderson balancing test. Including the Tenth Circuit. That's true. But other courts looking at geographic distribution requirements choose not to apply an Anderson balancing test. And I think for purposes of our motion to dismiss under 12b-6, we're making an argument, a legal issue, an argument of law, I think an Evanwell type analysis is as far as this court needs to go. Judge Murphy, I want to return to the issue of equality of representation that we were touching on. I think that it's, again, it's about giving equal political power to districts of the same total population. And the Davis case cited in Evanwell gets at this a little bit. If Colorado says we want each Senate district to have equal political power at the signature gathering stage of the initiative process, just like our representatives at the General Assembly have equal political power for total population. districts, that is the policy decision that Colorado is permitted to make. And it's not an equal protection problem under the federal constitution. I think there was some discussion about angle. And angle perhaps suggests that ensuring a modicum of statewide support is not a compelling interest. That is what footnote 7 says in angle. But angle also goes on to say that it is an important and legitimate state interest. And then it applies rational basis, which is what we're asking this court to do. So I think angle is the type of analysis that this court should engage in, recognizing that Colorado does have an important and legitimate state interest, ensuring a modicum of statewide support before something goes on with the ballot. Are you saying, then, that if this court decides rational basis is not appropriate, that strict scrutiny that you lose? I'm not conceding that, Your Honor. No. If strict scrutiny is the appropriate test, I think there would be some evidentiary issues that would have to be sorted out. I think the strength. Such as? Such as the strength of the state's interest. And I went through some of those earlier. Also, the availability of alternatives, which is something that our expert started to provide an opinion on, but was not allowed to present that opinion to the court through live testimony. And I'd also point out that the expert. Well, when the court said, show cause, tell me why I'm wrong, didn't you have the opportunity to show those alternatives or make any other argument that you thought appropriate? We had 23 days to do that, Judge Briscoe. And that is not enough time for our expert to provide a complete and full opinion on. Did you seek additional time? No, we did not, Your Honor. We did provide preliminary, a preliminary opinion, and we requested an evidentiary hearing and additional discovery in order to provide a full opinion. We did not request more time for the show cause response, but we did request discovery and an evidentiary hearing. If strict scrutiny applies, you went off on the need for evidence. And if strict scrutiny applies, are you conceding that you lose on the motion to dismiss part? No, I'm not conceding that either, Your Honor. I think on the motion to dismiss, it's a 12B6 argument under Evanwell. And applying the Evanwell type of analysis, we win as a matter of law. All right. But, okay. So similar to that, let me ask you, Mr. Ogden, if strict scrutiny applies, the sole pillar of your case is Evanwell. I don't want to go that far either. I think it's Evanwell combined with all of the cases that follow Engle and the Engle type of analysis. You combine those two analyses, and Colorado has done nothing improper under the Equal Protection Clause. Thank you. Thank you. We'd have to reverse. Thank you, counsel. Thank you both for your arguments this morning. The case is submitted. Court is in recess until 830 tomorrow morning.